J. P. MUSSELWHITE, THERESA E. MUSSELWHITE, W. H. HOWARD AND RENA C. HOWARD, WEST-FLYNN & HARRIS COMPANY, A CORPORATION, AND FLYNN-HARRIS BULLARD COMPANY, A CORPORATION, *Appellants,* v. SVEND OLESON, *Appellee.*

1. As a general rule where a vendor is unable to convey a proper title according to his contract, the vendee may treat the contract as at an end, and may recover in the equitable proceedings for a rescission, the money which he has paid on account of the purchase price.

2. There is a clear distinction between executed and executory contracts as to the right of rescission of a contract. Ordinarily in the case of executed contracts a vendee cannot rescind a contract on the mere ground of a defect in the title, but it is otherwise in the case of an executory contract. In such a case for a defect in the title he may rescind and have the purchase money refunded.

3.  The assignee to whom was transferred for a valuable consideration, all the rights and liabilities of the purchaser of timber rights under a contract for the sale thereof in an equity proceeding brought by him for rescission of the contract because of the failure of the vendors to comply with the contract to give a good title and to properly care for the timber, may recover the purchase money paid by the assignor, less the value of the timber cut by the assignor, where there is a prayer for such relief, the right of recovery is not questioned by demurrer and the evidence sustains the allegations of the bill.

This case was decided by Division B.

Appealed from the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Wm. P. Smith* for appellants;

*Cockrell & Cockrell* for appellee.

HOCKER, J.—Svend Oleson filed his bill of complaint against appellants in the Circuit Court of Duval County in July, 1909, wherein he alleged that J. P. Musselwhite, Theresa E. Musselwhite, W. H. Howard and Rena C. Howard on September 16, 1909, entered into a contract with Fairfield Lumber Company, a corporation, a copy of which is made a part of the bill, and that for a valuable consideration the Fairfield Lumber Company transferred all its rights and liabilities in said contract to the orator Oleson, who took the place of the Fairfield Lumber Company, and was accepted as a party to the contract by defendants Musselwhite and Howard. By the terms of the contract Musselwhite and Howard sold to the Fairfield Lumber Company and to the orator all pine and cypress timber measuring eight inches at the butt on land

described in the contract, with the privilege of going on the land to cut and remove said timber, with the stipulation, however, that Musselwhite and Howard should have the right to turpentine the timber on said land until the same should be released to the Fairfield Lumber Company and orator, in the following manner, *viz*: at the time of the execution of the contract four thousand acres in a contiguous body should be released from the turpentine privilege—three thousand acres on the 1st of January, 1910, as near as practicable to the former, and three thousand acres on the first of January in each and every year thereafter until all of said timber shall be released.

In consideration of said contract said Fairfield Lumber Company paid Musselwhite and Howard $10,000.00, and delivered to them sixteen promissory notes, payable to their order, for the aggregate sum of $39,490.00. These notes were surrendered and orator's notes given in their place. All of the notes were for $2,500.00 with eight per cent. interest, except the sixteenth, which was for the sum of $1,990.00 due on October 1st, 1912. These notes were payable in a series on 1st of January, 1st of April, 1st of July and 1st of October, and ending October 1st, 1912. When the $10,000.00 was paid certain lands described in the bill were released. Orator paid the notes due respectively on January 1st, 1909, and April 1st, 1909, and alleges he complied in all respects with the contract.

The bill alleges it is provided in the contract that Musselwhite and Howard would warrant the title to said timber and would pay off and discharge all liens, and would procure a release from any purchase money lien or mortgage on all timber delivered at or before date of delivery. That said Fairfield Lumber Company and your orator were informed at the time of the execution of the said contract there was a mortgage conveying the property

described in said contract held by West-Flynn & Harris Company, but neither Fairfield Lumber Company nor orator knew or were informed there was any other lien on the property up to and until the time orator became a party to the contract. After the payment of the note payable 1st of April, 1909, orator first learned what is the fact, that there is a further purchase money mortgage lien on said property in favor of James Council and Arthur L. Council for $15,000.00 executed 17th of January, 1907; that the indebtedness thereby secured became due and payable on November 8th, 1907, and has not been paid, and the property delivered as aforesaid has not been released from said mortgage, and the lien is liable to be enforced at any time; that by reason of the said failure of title and failure of Musselwhite and Howard to procure a release from said mortgage of the property delivered, said contract has been violated by them, though orator demanded of them that they procure a release which they have failed to do. The bill further alleges that the contract contained an agreement that Musselwhite and Howard, their heirs and assigns to work the timber in a good and careful manner, and will not place more than three boxes in any one tree, and that this agreement has been broken by the defendants; that they have not worked said trees in a good and careful manner, but on the contrary have done so in a bad and negligent manner—have negligently allowed fires to be built in the vicinity of the timber while the wind was blowing strong, have allowed such fires to spread to and burn large quantities of timber causing great deterioration in the value of the timber contracted to be conveyed to the orator, many of the trees having been killed and will rot and become valueless as timber, and that the defendants by back-boxing and back-cuffing the trees have killed and are kill-

ing about ten per cent of the trees; that upon learning, of the said breaches of the contract the orator, being unable to obtain any satisfactory settlement, elected to consider said contract at an end and refused to pay the note due 1st of July, 1909. The orator avers upon information and belief that Musselwhite and Howard are badly involved financially and unable to pay their debts, that their property is heavily encumbered and that a judgment at law against them for breach of contract would not be collectible. The orator avers that he has a lien on the interest of Musselwhite and Howard in the land described in the contract for the repayment to him of the money already paid by the orator and Fairfield Lumber Company on the purchase price of the property.

The bill alleges that Musselwhite and Howard have endorsed and delivered to the defendant West Flynn and Harris Company, a corporation, the notes hereinbefore described, and that the West Flynn and Harris Company is now the holder of said notes, but not an innocent holder, but a holder with full notice of orator's equities in the premises, having no stronger rights than Musselwhite and Howard would have; that orator informed defendant West Flynn and Harris Company of the breaches of said contract as aforesaid, and of the recision thereof as aforesaid, before the note of July 1st, 1909, became due, and that orator was not liable on said notes.

The bill alleges that defendant Flynn Harris Bullard Company, a corporation, has entered into business relations with West Flynn and Harris Company, by merger or otherwise, and that by reason thereof has some sort of interest in said notes, but such interest is bound by all the equities that exist as aforesaid against West Flynn and Harris Company. The bill prays that defendants Musselwhite and Howard be required to repay to orator

the money advanced by Fairfield Lumber Company and orator in payment of the purchase price; that a lien for repayment of said purchase be decreed to exist in favor of orator on the interest of defendants Musselwhite and Howard in and to the lands described in the contract, and that the same be sold and proceeds applied to the decree, and that West Flynn and Harris Company and Flynn Harris Bullard Company be required to cancel and surrender to orator the said notes, and orator be granted such other or further relief as in the premises may be equitable. The bill prays for process, for answer not under oath, etc. The bill also prays for an injunction against any disposition of the notes to prevent a multiplicity of suits.

The foregoing abstract of the bill presents all that we deem necessary for a proper consideration of the case. The contract made a part of the bill shows the terms set forth in the bill with reference to discharging all liens of any nature against the property, and for working the timber in a good and careful manner, and not placing more than three boxes in any one tree, and which it is alleged were violated.

There were demurrers to the bill, which were overruled, but an assignment of error based on this ruling is not argued here.

The defendants Musselwhite and Howard and their wives answered the bill, admitting the execution of the contract of sale, the payment of ten thousand dollars purchase money by Fairfield Lumber Company, the execution of the notes as alleged, the assignment of the contract to orator, and the substitution of his notes for those of Fairfield Lumber Company, and the payment of the notes due January 1st and April 1st, 1909. They deny that there was any other lien on the property except that of the West Flynn & Harris Co.

The defendants J. P. Musselwhite and his wife Theresa, W. H. Howard and his wife Rena, answered the bill, admitting that they executed the contract of September 16th, 1908, with the Fairfield Lumber Company, but do not know the consideration paid by complainant for the transfer of said contract, and demand strict proof. They admit selling the cypress and pine timber as alleged; that they received ten thousand dollars as alleged, and the notes as alleged, as well as the substituted notes of complainant. They admit the allegation as to releasing the 4000 acres of timber when the contract was made as alleged—that the notes due January 1st and April 1st were paid as alleged. They admit that they agreed in and by the contract to warrant the title to the timber as same was delivered, and that they would secure a release of all liens then existing at or before the time of delivery to the various bodies of timber as delivered, and deny that when the four thousand acres were delivered there was any lien on same except the mortgage of West Flynn & Harris Company which was then released—and specifically deny that the mortgage to James and Arthur L. Council dated 17th of January, 1907, was or constituted any lien on said property at the time of the delivery of said timber or since, that the Council mortgage was not recorded until November 20th, 1908, and complainants contract was recorded 1st of October, 1908. They aver that complainant and Fairfield Lumber Company immediately took possession of the four thousand acres delivered, and have cut therefrom approximately four hundred thousand feet of lumber, and that the Councils raised no objections. They aver that the Council mortgage was never intended to and did not encumber the timber delivered, and for that reason there was no release of same. They aver that complainant purchased with full

knowledge of the Council mortgage, and same was past due, and that complainant is estopped to set up same as a breach of the contract. They admit they did refuse to have the entire mortgage of West Flynn & Harris Company cancelled because it is not provided in the contract that more than the timber released each year shall be released from any lien, and that by the contract no release of timber is due to be made before January 1st, 1910. They aver that complainant has not been disturbed in his possession, that all moneys so far received have been applied to the liens. They admit that the contract contains a provision that they will work the timber in good and careful manner, and will not place more than three boxes in any one tree, and allege that this provision has been observed and the timber worked with usual and due care observed by careful naval stores men. They deny that they have negligently allowed fires to be built in the vicinity of the timber, or that they have allowed fires to spread and burn large quantities of timber; that they did not agree no fires should be set out, or no fires would spread, but only that they would use due and ordinary care, and that if fires have spread it was not because of their negligence; that said fires were set out by causes unknown to the defendants, and that they could not have prevented same. They deny that large quantities of timber have been damaged by said fires, and aver that if any timber has been damaged, it was no more than is ordinarily damaged each year on any naval stores place in the State. They aver it was not their duty to protect the timber delivered where the greater part of the damage has occurred. They aver they did not warrant the timber would not deteriorate in value, and if it has done so it constitutes no breach of contract. They aver there is no provision in the contract against back-boxing, girding or

cupping trees.   They admit the note due July 1st, 1909;
was not paid, and aver such failure of complainant
breached the contract, and thereby forfeited all rights.
They. aver that the matters set up by complainant are
mere pretexts to get out of the contract.   Defendants deny
they are insolvent; that plaintiff has any lien on the
property described in the contract, and aver complainant
has forfeited all his rights to the amounts of money paid,
and all right to continue payments.   Defendants admit
they have endorsed the notes to West Flynn & Harris
Company, and aver that the latter or its successor is an
innocent holder for value.

West Flynn & Harris Company, and Flynn Harris Bul-
lard Company answered the bill.   Nothing in addition to
the previous answer is set up as a defense.   West Flynn
& Harris Company admit that they took the notes, but
deny they knew of any equities existing between complain-
ant and Musselwhite and Howard, and aver that they are
innocent holders for value, and had no notice of any
alleged breach of contract until after the notes had been
endorsed.   Defendant Flynn Harris Bullard Company
aver that it is the successor of West Flynn & Harris Com-
pany, and holds said notes at this time without notice of
any equities existing between the complainant and defend-
ants Musselwhite and Howard.

Replications were filed to these answers, and a Special
Examiner was appointed to take the testimony, which was
done and reported to the court.   On final hearing the judge
made and entered the following decree:

"Decree.

This cause coming on to be heard upon the bill  answers,
replication and testimony and being set down for final

hearing in pursuance of notice, argument was made by counsel for the respective parties, and this cause having been taken under advisement.

It is considered, ordered, adjudged and decreed that this court has jurisdiction of the parties and the subject matter, that there is equity in the bill and that the complainant is entitled to relief.

And it is further considered, ordered and adjudged and decreed that the defendants other than the two defendant corporations entered into the contract, a copy whereof is attached to the bill and the original whereof is filed in evidence, with the Fairfield Lumber Company; that the complainant became the assignee of said contract and was accepted by all persons concerned in the place and stead of the Fairfield Lumber Company his notes aggregating $39,490.00 being accepted in lieu of the Fairfield Lumber Company's notes, the latter being surrendered; that the complainant and his assignor under said contract paid to the defendants other that the Flynn Harris Bullard Company, the sum of $15,000.00 being the initial payment of $10,000.00 and two of said notes of $2,500.00 each with interest; that one of the considerations moving to the complainant in accepting said contract was embodied in said contract, to-wit, the complainant should have the right to cut and remove certain pine timber subject to the right of the defendants Musselwhite and Howard to work the said timber for turpentine purposes until the same shall be released, but that they were to work said timber in a good and careful manner; that the defendants Musselwhite and Howard worked said timber for turpentine purposes, but were negligent and did not work the same in a good and careful manner and thereby materially lessened the value of said timber to the injury of the complainant who pro-

tested in due season, and that the failure on the part
of the defendants Musselwhite and Howard to work said
timber in a good and careful manner was a material
breach of said contract, that one of the considerations
moving to the complainant in accepting said contract was
embodied in said contract, to-wit, that the defendants
Musselwhite and Howard would procure a release from
any purchase money lien or mortage on the 4000 acres of
land to be turned over to the complainants assignor at the
time of entering into said contract and on each of the
parcels of 3000 acres to be turned over in the future on or
before the date thereof; that prior thereto a mortgage for
$15,000.00 had been given by the defendants Musselwhite
and Howard to James Council and Arthur L. Council in
part consideration of the purchase of said land by the
mortgagors from the mortgagees, that said mortgage was
a lien on said land and timber at the time the said con-
tract was entered into and still is a lien thereon, none of
said land or timber having been released therefrom; that
while in law the complainant and his assignor were
charged throughout with notice thereof, neither in fact
had actual knowledge of said mortgage until after the
complainant had been substituted in the place of his
assignor and had paid his second note maturing April 1st,
1909, that complainant being informed made prompt and
insistent demand upon the defendants for a release of said
mortgage lien and it was the duty of the defendants Mus-
selwhite and Howard to procure a release of said mort-
gage lien as to said 4,000 acres, but this they neglected
and refused to do to the injury of the complainant, that
the neglect and refusal of the defendants Musselwhite and
Howard to procure a release of said mortgage lien as to
said 4,000 acres was a material breach of said contract;
that the defendants Musselwhite and Howard have ne-

glected, failed and refused to perform their contract in the particulars aforesaid and persist in their denial of the fact that said Council mortage is a lien on said timber and in their denial of the right of the complainant to a release of said Council mortgage lien in accordance with said contract, and persist in working said timber for turpentine purposes in a manner other than a good and careful manner according to said contract, and that the complainant and the complainant's assignor duly and fully performed said contract in all matters on their part to be performed until after the first day of April, A. D. 1909, and until after complainant demanded performance on the part of the defendants Musselwhite and Howard, and the persistent neglect, failure, and denial as aforesaid on the part of said Musselwhite and Howard.

And it is further considered, ordered, adjudged and decreed that neither of the defendant corporations, West Flynn Harris Company and Flynn Harris Bullard Company was or is an innocent holder of said notes, and that said notes are subject to the equities of the complainant and the defendants are hereby directed and required to cancel and surrender said notes maturing on or after July 1st, 1909, the same aggregating in the principal sum $34.490.. filed in evidence and withdrawn subject to the order of this court.

And it is further considered, ordered, adjudged and decreed that the defendants Musselwhite and Howard should forthwith refund to the complainant the amount paid by the complainant and his assignor under the contract as aforesaid, less the value of the timber cut and taken therefrom by the complainants assignor with interest at the rate of 8% per annum since the filing of this bill, July 22nd, 1909. That to secure the payment of said sum of money the complainant has a lien on all pine and

23—Vol. 60.

cypress timber measuring eight inches at the butt at the time of cutting on all those certain lots, tracts or parcels of land, situate, lying and being in the County of Orange and State of Florida and described as follows, to-wit:" Then follows the description of about 20,000 acres of land which it is unnecessary to set out here.

The decree then proceeds as follows: "And it is further considered, ordered, adjudged and decreed that George Couper Gibbs, Esq., a practicing attorney at the bar of this court be and he is hereby appointed Special Master in this cause, that said Special Master be and he is hereby directed to ascertain the amount due the complainant, and in doing so, that complainant be credited with said sum of $15,000.00 and that the complainant be debited with the value of the said 400,000 feet of timber cut and taken away from said land by the complainant's assignor, and in fixing said value the Special Master shall ascertain as near as may be the value of the standing-timber so cut at the time and place it was being cut, and said value being so fixed the same be deducted from the said sum of $15,000.00, and on the residue interest be allowed and added from the 22nd day of July, 1909, to date of the finding at the rate of 8% per annum, and that such Special Master shall file herein the testimony taken by him and his findings with all convenient speed.

Done and ordered this 20th day of May, 1910.

R. M. Call, Judge."

On appeal here there are two assignments of error. The first is based on the order overruling the demurrers to the bill. The second that the court erred in granting the final decree. The first assignment is not argued here. As to the second assignment appellants seem to rely for reversal upon four contentions:

"1st. The alleged breaches of contract are not sufficient in the absence of proof to sustain the allegation of insol vency of Musselwhite and Howard to entitle appellee to rescission.

2nd. If the alleged breaches were made appellee waived his right of rescission by his conduct in making payments and holding the contract after the time of alleged breaches.

3rd. The allegations of the bill as to breaches of covenant are not only not sustained by the evidence, but the great preponderance of the evidence shows such allegations are wholly unfounded in fact.

4th. There is nothing in the proof to warrant the decree 'that the $10,000.00 paid to the Fairfield Lumber Company by appellants Musselwhite and Howard should be decreed to appellees. (There is evidently a clerical error in the statement that $10,000.00 was paid *to* the Fairfield Lumber Company by Musselwhite and Howard.)"

It is clear from the evidence that Musselwhite and Howard were very considerably in debt. They owed the Councils $10,000.00 upon their mortgage. Their property was also under a mortgage to the West Flynn & Harris Company. The exact amount of their indebtedness is not shown by them, nor is it even shown approximately. The same may be said of the value of their property. These were matters peculiarly within their knowledge. If the record contains such evidence it should have been pointed out. We have not discovered it. There is a good deal of opinion evidence by them as to what they were worth, but nothing of a definite nature. It is entirely probable from the evidence they were not able to pay the Council mortgage, though it had been due for some time. The contract required the defendants Musselwhite and Howard to procure

a release from any purchase money mortgage or lien of the 4,000 acres turned over to Fairfield Lumber Company, and it is clear this was not done as to the Council mortgage. It does not appear that they were making money and that their condition was likely to improve with the years covering the contract. We are unable to say affirmatively from the evidence that Musselwhite and Howard were not financially embarrassed, nor can we say that a common law judgment could have been made out of their property. Their apparent assets, consisting of timber and turpentine investments are not shown to have had a market value, or any value except as expressed by the more or less indefinite opinions of defendants. Moreover the bill does not allege that Musselwhite and Howard were insolvent, but only that they were so financially embarrassed a judgment at law could not be made out of their property. The sufficiency of the allegation of the bill in this respect is not raised here by demurrer. Issue was joined on the allegation, and we have expressed our view of the proof. Again, as a general rule where a vendor is unable to convey a proper title according to his contract, the vendee may treat the contract as at an end, and may recover in the equitable proceeding for rescission the money which he has paid on account of the purchase price. 29 Am. & Eng. Ency. Law (2nd ed.) 727.

There is a clear distinction between executed and executory contracts, as to the right of rescission of a contract. Ordinarily in the case of executed contracts a vendee cannot rescind a contract on the mere ground of a defect in the title, but it is otherwise in the case of an executory contract. In such a case for a defect in the title he may rescind and have the purchase money refunded. Hunter, Adm'r v. Bradford, Adm'r, 3 Fla. 269, text 286 *et seq.*

The contract in the instant case is executory in that it

provides for the possession of a considerable part of the timber by the defendants for several years, that in the meantime defendants shall care for it, and at stated future periods turn it over to the complainant. Considering the peculiar character of the property rights involved in this contract—the liability of their destruction unless the timber was worked in a careful manner, the facts alleged in the bill seem to appeal with great force to a court of equity.

The next contention is that complainant had waived his right to rescind because of his conduct in making payments and holding the contract after the alleged breaches. We find little foundation in the evidence for this contention. It is perfectly clear that the Council mortgage has not been released as to the four thousand acres, which was released from the turpentine privilege when the contract was made, and that complainant has not waived his right to have it released. He seems to have insisted upon it. Moreover, the appellants do not indicate to us the testimony which shows that complainant was advised of what he alleges was the careless way in which the timber was cared for, and for the loss occasioned thereby when the notes were paid.

As to the third contention that the allegation of breach of the contract is not sustained by the evidence, it is only necessary to say that there was some conflict in the testimony on this question, but we fail to see that the Chancellor erred against the preponderance of the evidence.

The fourth contention is that complainant does not show from the evidence that he is entitled to the $10,000.00 paid by the Fairfield Company. The bill alleges that the Fairfield Lumber Company for a valuable consideration transferred all its rights and liabilities under the contract to the complainant. This allegation is not denied. The bill

prays that the defendants Musselwhite and Howard be required to repay to complainant the money advanced by the Fairfield Lumber Company. There was a demurrer to the bill in the court below, which was overruled, but we do not find that the foregoing contention is set out in any of the grounds of demurrer. Moreover, as we have said before, the overruling of the demurrer, though made the basis of the first assignment of error, is not argued here. The decree follows the allegations and prayer of the bill, but very justly requires that the value of the timber cut and taken from the land by the Fairfield Lumber Company shall be deducted from the $10,000.00 payment paid by it.

Finally, we think that the bill, as it comes before us in this record and in the briefs shows ground for the equitable relief which was granted. That in the absence of any objection founded upon demurrer, we are not called upon to make a critical examination of every feature of the bill, and that the evidence is not such as to warrant us in reversing the decree of the Circuit Judge.

The decree appealed from is affirmed.

TAYLOR and PARKHILL, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD, and COCKRELL, J. J., concur in the opinion.