L. A. LEATHERS DEVELOPMENT COMPANY, a Florida Corporation, et al., *Appellants*, v. ORANGE INVESTMENT COMPANY, a Florida Corporation, et al., *Appellees*.

Special Division B.

Opinion filed February 23, 1929.

Petition for rehearing denied March 28, 1929.

*George P. Garrett* and *W. M. Toomer*, for Appellants;

*Maguire & Voorhis*, for Appellee.

BUFORD, J.—This is an appeal from an order of the chancellor sustaining a demurrer interposed by Orange Investment Company to the bill of complaint of L. A. Leathers Development Company in which the complainant sought rescision of the purchase and sale of certain real estate upon the ground, first, that it was represented to the vendees that the real estate had a frontage of 275 feet on Hughey street, in the City of Orlando, when in truth and in fact it only had 255 feet frontage on such street; and upon the

further ground that the title was defective in certain respects pointed out in the bill of complaint.

The suit was filed several months after the purchase and sale had been consummated, after warranty deed had passed the title from Orange Investment Company to the complainant and after the complainant paid a part of the purchase price in cash and had given its obligations satisfactory to the vendor for the balance thereof, which obligations included certain notes and mortgages.

Attached to the bill of complaint is the contract for the purchase and sale which was executed by Sleigh & Williams, brokers, by A. B. Williams, and by L. A. Leathers Development Company, by L. A. Leathers, President, and which appears to have been approved by Nixon Butt, W. D. Way, A. Blenn Williams and Johnson & Miller, as owners. The contract contains the following provision:

> The seller is to furnish an abstract showing his title to be good and marketable, but in the event that the title shall not be found good and marketable, the seller agrees to use reasonable diligence to make the said title good and marketable, and shall have a reasonable time so to do, and if after reasonable diligence on his part said title shall not be made good and marketable within a reasonable time, the seller shall return the money this day paid and all monies that may have been paid to him under this contract, and thereupon he shall be released from all obligations hereunder. Or, upon the request of the purchaser, he shall deliver the title in its existing condition.

The bill alleges that the abstract was delivered as per the contract and that pursuant to the delivery of the abstract the deal was closed and the title passed to the purchaser.

Under the terms of the contract the purchaser had the

right upon examination of the abstract to decline the purchase because of material defects shown to exist in the title and to demand the return of the earnest money paid, or, on the other hand, he had the right to demand delivery of the title in its existing condition.

If, after having the abstract in his possession, he accepted the title as he found it, he could not later plead that he had not examined the abstract and, therefore, had not observed defects shown therein and thereupon asked for rescision, but he will be conclusively presumed to have accepted the title as he found it under the terms of his contract, there being no allegation of fraud or deception contained in the abstract so submitted.

In the case of Hunter, Administrator, v. Bradford, 3 Fla. 369, this Court, speaking through Mr. Justice HAWKINS, say:

Courts draw a distinction as to claims for equitable interposition, between contracts *executory* and contracts *executed*. It is well settled that where the purchaser takes a deed with warranty, and enters and remains in undisturbed possession of the land conveyed, (the purchase money having been paid,) if there is no fraud in the transaction, he cannot, before eviction, ask and obtain the aid of the court of equity, in order to have the contract rescinded, or the purchase money restored to him, on the ground of defect in the title. In such a case, his remedy is at law upon the covenants in his deed of warranty.

The law as enunciated in this opinion has not been abrogated by any of the later decisions of this Court, but has been repeatedly approved. See Mickler v. Reddick, 38 Fla. 335, 21 So. R. 286; Musslewhite v. Olson, 60 Fla. 342, 53 So. R. 944.

The bill of complaint shows upon its face that the property was inspected by the vendees, the complainants in the court below, with a view to purchasinig the same before the purchase was made. The allegations of the bill show conclusively that the proposed purchasers had every opportunity to ascertain for themselves the actual frontage of the lot on Hughey street. It is alleged that the amount of purchase price was arrived at by figuring the front footage on Hughey street and that the price per front foot so figured was $375.00.

The contract for purchase and sale, however, calls for a lump sum of $103,125.00 for "Lot No. 1 of Block B of J. P. Hughey's Addition to Orlando, according to the plat thereof, recorded in Plat Book A, page 26, Public Records of Orange County, Florida," then follows the statement, "This is 275 ft. frontage on Hughey Street, 116 feet deep." It would appear that an ordinary, reasonable and prudent business man who contemplates purchasing property at the price of $375.00 per front foot and who is on the ground with every opportunity to inspect the property, and with every opportunity to ascertain by actual measurement the frontage of the property of which he contemplates the purchase, would ascertain the number of feet by actual measurement, and that failing to do so and closing the deal, accepting a warranty deed describing the property without any reference to the front footage, and pays the purchase price, part in cash and the balance by notes and mortgage, and having gone into possession of the property and enjoyed that possession for some time, he could not then come into a court of equity seeking the rescision of the entire transaction, because of a shortage which he had every opportunity to learn all about before closing the transaction. It is not necessary, however, for us to determine this question in the instant case because the allegations of the bill of com-

plaint are not sufficient to show that any misrepresentations were made by Orange Investment Company or by any *agent* of Orange Investment Company *authorized* to act or to negotiate a sale in its behalf.

The bill alleges that Sleigh & Williams, brokers, listed the property as the property of Orange Investment Company and that they sold the property as the property of the Orange Investment Company, but it nowhere alleges that these brokers were the *authorized agents* of Orange Investment Company. Neither is it alleged that Orange Investment Company at any time had any knowledge or notice of the representations alleged to have been made by the brokers as to the front footage of this lot on Hughey street.

The order sustaining the demurrer of Orange Investment Company should be affirmed, and it is so ordered.

Affirmed.

TERRELL, C. J., AND WHITFIELD AND ELLIS, J. J., concur.

BROWN, J., concurs specially.

BROWN, J.—I concur in the holding that there was not a sufficient showing in the bill for rescision, but I am not prepared to say that the facts alleged do not show a basis for some relief by way of abatement of purchase price. That, however, is not the relief sought in this action, and I agree with the opinion that the demurrer was properly sustained.

BUFORD, J., concurs.