54 So.2d 44 (1951)
JOHNSON
v.
GREEN et ux.
Supreme Court of Florida, Division B.
July 31, 1951.
*45 Anderson & Nadeau, Miami, for appellant.
Myers, Heiman & Kaplan, Miami, for appellees.
CHAPMAN, Justice.
Guy N. Johnson and wife, Nina D. Johnson, during the year 1929 or 1930, acquired a tax deed to Lot 179, Palmhurst, a subdivision in Dade County Florida, according to the plat thereof recorded in Plat Book 7 at page 22 of the public records of Dade County, said property commonly known as 3165 Ohio Street, Coconut Grove. Situated on the property was a house or dwelling which the Johnsons went into possession of and occupied as a home for approximately one year after obtaining the tax deed. The house or dwelling was later furnished (according to inventory) and rented to tenants on a monthly basis. On June 11, 1946, the Johnsons entered into a written agreement to sell the described property to Charles W. Green and wife, Reba Green, which instrument was signed by the parties. The agreed purchase price of the property was fixed at the sum of $7,750.00, payable $3,500.00 in cash and the balance of $4,250.00 to be secured by note and mortgage, and the note was to be paid at the rate of $50.00 per month. The parties contracted to convey a "good and merchantable title".
It appears by the record that the Johnsons filed suit and obtained a decree quieting title to the real property described in the purchase and sale agreement and thereafter the parties closed their trade. Guy N. Johnson and wife, Nina D. Johnson, executed and delivered a warranty deed date June 18, 1946, to the described real estate and furnishings then in the dwelling located at 3165 Ohio Street, Coconut Grove, Florida. The deed was duly recorded and the grantees named therein went into immediate possession of the property, real and personal, after executing a purchase price note and mortgage in the sum of $4,250.00 payable to the grantors named in the warranty deed. The mortgage was duly recorded and monthly payments were made by the Greens on the indebtedness through the months of October, November and December, 1947.
The Greens, during the month of October, 1947, obtained the services of the Biscayne Engineering Company to survey the property described in the warranty deed, when it was determined, as a result of the survey, that the building or dwelling located on Lot 179 encroached on the lot immediately adjoining to the south (being Lot 190 of Palmhurst Subdivision) 5.55 feet at the west corner and 5.40 feet at the east corner. Lot 179, according to the map appearing in the record, was approximately 50 feet north and south by 125 east and west. An old rock wall or fence runs from the corner of the house east to a point opposite the southeast corner of Lot 179 and the grantors in the deed claimed the land from the southwest corner of the dwelling out to the street. Mrs. Velda Kegan lived in a house situated on Lot 190, just south of Lot 179, since 1941 and at page 62 of the transcript appears her *46 testimony to the effect that she learned for the first time of the alleged encroachment in October, 1947, when the Greens had the Biscayne Engineering Company survey the property. The Greens hold possession of Lot 179, supra, under the warranty deed from the Johnsons and their right of possession under the deed has never been challenged, nor have they been evicted from the property, nor has an eviction ever been threatened.
The Greens, as plaintiffs-appellees, filed their bill of complaint in equity against the Johnsons, defendants-appellants, and set forth the several details of the real estate transaction and concluded that it was the lawful duty of the Johnsons to convey to them a good and merchantable title to Lot 179, but failed so to do. That the Johnsons represented that they owned and could convey a merchantable title to the strip 5.55 feet north and south by 125 east and west off the south side of Lot 179, and such representations were false and material and intentionally made to induce them to act to their injury. The plaintiffs-appellees would never have accepted title, paid their money, and executed the purchase price mortgage had they been correctly informed as to the true southern boundary of Lot 179. The bill prayed for a rescission of the trade, the cancellation of the warranty deed and the purchase price mortgage, and for an accounting. That a lien be decreed on the described property for all money paid by the plaintiffs-appellees to the defendants-appellants.
An answer was filed, when the cause was referred to a Special Master, with directions to take the testimony of the respective parties and make recommendations as to an appropriate decree to be entered in the premises. The Special Master held that the disputed ownership of the strip of land 5.55 feet across the southern boundary of Lot 179 rendered the title not merchantable. The final decree rescinded and cancelled the sale, cancelled the purchase price mortgage, and decreed a lien on Lot 179 for the several sums paid to the plaintiffs-appellees and a further sum for betterments or improvements placed about the property by the Greens during the period they were in possession under the warranty deed continuously from 1946 until this suit was filed on February 26, 1948. The Johnsons appealed.
In our early case of Hunter v. Bradford, 3 Fla. 269, we held that where a purchaser takes a deed with warranty, pays the purchase price and has possession and there is no fraud in the transaction, he cannot, before eviction, obtain the aid of a chancery court to have the contract rescinded or purchase money restored on the ground of a defect of title, as his remedy is at law on the covenants in his deed. The rule is otherwise as to executory contracts. Randall v. Bourgardez, 23 Fla. 264, 2 So. 310, 11 Am.St.Rep. 379; Adams v. Fry, 29 Fla. 318, 10 So. 559; Camp Lumber Co. v. State Sav. Bank, 59 Fla. 455, 51 So. 543.
The case of Hancoy Holding Co. v. Lambright, 101 Fla. 128, 133 So. 631, involved a bill of complaint alleging material misrepresentations of pertinent facts and praying for a rescission and cancellation of the contract of sale. The case was dismissed by the Chancellor on final hearing and on appeal the order of dismissal was affirmed. An encroachment or disputed boundary 4.95 by 46.65 was there involved, similar in many respects to the disputed boundary of Lot 179 now before us. On the question of mistake, we point out that the authorities generally hold that equity will not grant relief where the mistake complained of resulted from the want of care or that degree of care and diligence which could be exercised by persons of reasonable prudence under the same circumstances. If this rule is applied, then it became the legal duty of the Greens to ascertain or determine the several corners of Lot 179, distances and location of the lines of the lot between the corners prior to accepting a deed. It appears that no effort was made by the appellees along these lines until October 6, 1947, when they had the lot surveyed.
On the issue of the disputed boundary or encroachment in the Hancoy Holding Company case, supra, we said, text 101 Fla. 138-139, 133 So. 631-635:
"Complainant in the instant case also claims as an additional ground for rescission of the purchase that it was found that *47 the Rand Building, which was constructed about a year before this sale was made, encroached upon the southern border of said property 4.95 feet front by 46.65 deep, and that defendant therefore had not delivered possession to that portion and declined to do so. In the case of Watkins et al. v. Emmerson, 88 Fla. 86, 102 So. 10, it was held that `a deed by one to land which is in the adverse possession of another is void as against such adverse claimant.' Farrington v. Greer, 94 Fla. 457, 113 So. 722; Gibbs v. McCoy, 70 Fla. 245, 70 So. 86; Gould v. Carr, 33 Fla. 523, 15 So. 259, 24 L.R.A. 130; Nelson v. Brush, 22 Fla. 374; Watrous v. Morrison, 33 Fla. 261, 14 So. 805, 39 Am.St. Rep. 139. A different rule applies in the case of mere encroachments or overlaps resulting from a mistake as to a border line, especially where the contract is not `executory,' but `executed' by delivery of a warranty deed. Musselwhite v. Oleson, 60 Fla. 342, 53 So. 944; Hunter v. Bradford, 3 Fla. 269. If there is no fraud in the transaction and the purchaser goes into possession, he cannot before eviction ask for and obtain the aid of a court of equity in order to have the contract rescinded, or the purchase money restored to him. In such cases, his remedy is at law upon the covenant of warranty in his deed. See [R.J. & B.F.] Camp Lumber Co. v. State Sav. Bank, 59 Fla. 455, 51 So. 543; Mickler v. Reddick, 38 Fla. 341, 21 So. 286; Leathers Development Co. v. Orange Inv. Co., supra, [97 Fla. 278, 120 So. 329]; Maull v. Lindsley, 79 Fla. 361, 84 So. 92." See Greenberg v. Berger, Fla., 46 So.2d 609.
The record discloses that Guy N. Johnson died shortly after the institution of the suit in the lower Court. Mrs. Nina D. Johnson testified that the defendants had been in the open, exclusive and undisputed possession of the strip on the south side of Lot 179 from 1929 or 1930 continuously until the property was conveyed to the Greens during the year 1946. Mrs. Potter and Mrs. Kegan, during the period, owned Lot 190 on the south, and all parties recognized the edge of the house and the wall fence as the correct boundary between Lots 179 and 190. The dispute or conflict in the boundary arose for the first time after the line was surveyed on October 6, 1947. It is true that Mr. Johnson was seen measuring about the property prior to the time of the survey. Counsel for appellant point out that if the record title owner of Lot 190 had been made a party to the suit, then the following authorities would control: Kilgore v. Leary, 131 Fla. 715, 180 So. 35; Williams v. Pichard, 150 Fla. 371, 7 So.2d 468; Watrous v. Morrison, 33 Fla. 261, 14 So. 805, and Shaw v. Williams, Fla., 50 So.2d 125. We cannot rule on the contention as the owner of Lot 190 has not been made a party to this litigation.
On September 22, 1950, the appellant, through counsel, applied to the Chancellor for permission to amend her answer to the original bill of complaint. The Court, by an appropriate order, authorized the amendment. This amended answer set out that Nina D. Johnson and husband, Guy N. Johnson, acquired title to the property on which the house described in the bill of complaint encroaches by adverse possession and that she and her husband, Guy N. Johnson, in his lifetime, were in actual, open, physical, notorious, adverse, continued, hostile and peaceable possession of said property for a period of more than seven years prior to the time when the title thereto was conveyed to the plaintiffs-appellees. Also, the plaintiffs, subsequent to the discovery of the alleged fraud, ratified the same by voluntarily paying sums of money due on the purchase price mortgage given to the appellees.
An examination of the testimony of the several witnesses for the respective parties, as shown by the record, will disclose no evidence whatsoever to contradict the testimony that the Johnsons had been in the open, hostile, adverse, continuous, peaceable and undisputed possession of the 5.55 feet strip off the south side of Lot 179 since 1929 or 1930 until a warranty deed was delivered to the appellees to the property in June, 1946, when they went into the possession of the strip of land in question, along with the remaining portion of Lot 179. Mrs. Reba M. Green's letter dated December 17, 1947 (Tr. 126), shows payments on the purchase price mortgage after the date of the survey on October 6, 1947. It appears *48 that the allegations of the amended answer of Mrs. Nina D. Johnson were clearly established and the Chancellor erred in holding otherwise. The record title owner of Lot 179, who is not a party to this suit, is in no manner bound by the decree entered in this cause.
The final decree appealed from is reversed with directions to dismiss the bill of complaint.
SEBRING, C.J., and ADAMS and ROBERTS, JJ., concur.