414 P.2d 879

**Eldon W. JOLLEY and Edna Jolley, husband and wife, and E. Dale Jolley and Mildred Jolley, husband and wife, Plaintiffs and Appellants,**

v.

**IDAHO SECURITIES, INC., an Idaho corporation, Fred R. Jacobsen, President of Idaho Securities, Inc., and Mary Louise Jacobsen, Secretary of Idaho Securities, Inc., and Fred R. Jacobsen and Mary Louise Jacobsen, husband and wife, State of Idaho, and United States of America, Defendants and Respondents.**

No. 9685.

Supreme Court of Idaho.
March 23, 1966.

Rehearing Denied June 7, 1966.

Charles Herndon, Salmon, for respondents.

Hugh C. Maguire, Jr., and Jones, Pomeroy & Jones, Pocatello, for appellant.

Allan G. Shepard, Atty. Gen. for State of Idaho, Sylvan A. Jeppesen, U. S. Atty., and Jay F. Bates, Asst. U. S. Atty., Boise, for respondent United States of America.

McFADDEN, Chief Justice.

This action arises out of an agreement dated June 16, 1963, for the exchange of real and personal property executed by plaintiffs-appellants, Eldon W. Jolley and wife, and E. Dale Jolley and wife, and by the defendant-respondent Idaho Securities, Inc., a corporation, (herein referred to as the corporation.)

Prior to execution of this agreement, the Jolleys owned certain ranch land situate in Lemhi County, together with certain farming machinery. This ranch property was subject to a mortgage to Travelers Insurance Company. Being desirous of exchanging this property for business income property, they contacted a real estate salesman, Theo Morgan, an employee of Dale Aravo, who did business as Western Realty Company.

Idaho Securities, Inc., was incorporated in March, 1961, by respondents Fred R. Jacobsen and his wife, who shortly thereafter conveyed to the corporation real and personal property in Caldwell, known as the Saratoga Hotel. At that time the real property was subject to a mortgage to R. L. Graves.

Early in March, 1963, Idaho Securities, Inc., listed the hotel property for sale with Harold Packer, real estate broker. The respective real estate men brought the principals together and extensive negotiations were entered into between the Jolleys and Mr. Jacobsen acting for his corporation, which negotiations culminated in the agreement of June 16, 1963. By this agreement, the corporation agreed to trade the Saratoga Hotel for appellants' Lemhi County ranch and machinery, and appellants agreed to the trade. The contract stated that Idaho Securities, Inc., "does hereby covenant and agree that it does have good and marketable title to the real and personal property, [the Saratoga Hotel] that it was selling, subject only to a recorded first mortgage in favor of R. L. Graves." The agreement further provided that the Jolleys "do hereby covenant and agree that the real property is subject only to a mortgage in favor of the Travelers Insurance Company, which mortgage is dated December 9, 1954, and recorded in the records of Lemhi County, Idaho". The agreement further provided that the corporation assume certain listed indebtedness on the farm machinery, and that each party pay all taxes and assessments on the real property transferred, for the year 1962 and all previous years; that taxes and assessments for 1963 and subsequent years were the obligation of the respective transferees; that each party agreed to deliver good and sufficient warranty deeds and bills of sale and affix requisite internal revenue stamps. The agreement further provided:

"Within a reasonable time after the execution of this agreement each of the

parties hereto does agree, at the transferrors expense, that they will deliver to the transferee an abstract of title to the real property being transferred by the transferror, extended to date. The transferee shall have a period of thirty days in which to examine the said abstract, and to point out any defects in title, in writing, delivered to the Western Realty in Nampa, Idaho. It is understood and agreed that the evidence of title shall show the title of the transferror to be good and marketable and free and clear of all encumbrances except those set forth herein. The transferror shall have the duty of correcting any defects of merit in title, within a reasonable time after notice of the same."

"\* \* \*

"In connection with the Saratoga Hotel property, the Buyers [the Jolleys] all do understand and agree that there are back taxes in the amount of $10,230, back payments on the Graves mortgage of both principal and interest in the amount of $3,100.00, and a balance on the ice machine of $285, all of which the Buyers do agree that they will pay as soon as reasonably possible. All other liens or obligations or encumbrances of any type or kind against the premises and property sold are to be paid by the Seller as soon as reasonably possible, including, but not limited to the Federal and State tax liens, except as hereinafter set forth.

"In connection with Lemhi County property, it is understood and agreed that there is a mortgage against the same in favor of The Travelers Insurance Company, in the amount of $38,500.00. The Seller has assumed the same and does agree that it does take over and assume and agree to pay in full, promptly and before any delinquency, all payments of principal and interest that are now due or that may become due. Likewise, the Buyers do agree to make all subsequent payments on the Graves mortgage, promptly and before any delinquency.

"It is understood and agreed that this entire transaction is conditional upon the Buyers [The Jolleys] being able to increase the Travelers Insurance Company loan on the Lemhi County property in the additional amount of $10,000.00, as a minimum. This is to be done in the Buyers name, and the Seller [Idaho Securities, Inc.] is to assume and pay in full this additional obligation, promptly and before any delinquency. Any such refinancing costs are to be promptly paid by the Seller. The gross proceeds of this loan are to be disbursed as follows: $10,000.00 to the Buyers, which sum the Buyers are to use to pay the back real estate taxes on the Saratoga Hotel property, and any gross sum over $10,000.00, to the Seller \* \* ".

The agreement recited that the Jolleys had been in possession of the Saratoga

Hotel since May 1, 1963, and Idaho Securities Inc., in possession of the Lemhi County ranch since May 1, 1963.

After the agreement and warranty deeds were prepared, and still unsigned, they were given to Mr. Morgan, appellants' real estate agent, who submitted the instruments to the Jolleys for signature. After the agreement and deed to the Lemhi County property were signed by the Jolleys, Morgan then took the instruments to Salmon, Idaho, where the agreement and deed to the Saratoga Hotel was signed by the officers of the corporation. Morgan then gave the respective parties copies of the agreement. He then delivered the corporation's deed on the Saratoga Hotel to the Jolleys on June 20, 1963; Mr. Eldon W. Jolley recorded this deed July 2, 1963, in the Canyon county recorder's office. June 28, 1963, Morgan delivered the Jolleys' deed on the Lemhi county property to Mr. Arave, of Western Realty Company. Mr. Arave in turn forwarded the deed to the corporation, which caused the deed to be filed for record July 22, 1963, in the Lemhi county recorder's office.

The Jolleys sought to secure the abstract of title to the Saratoga Hotel, but such abstract was never delivered. They did not make payments on the Graves mortgage. Suit was instituted to foreclose this mortgage, and a receiver was appointed, who took possession of the property about January 1, 1964.

In October, 1963, the Jolleys instituted this action. In their complaint they alleged breach by the corporation of conditions precedent to the transfer and exchange of real property set forth in the June 16, 1963, agreement. They also alleged that they were induced to enter into the agreement by false representations that the property was free and clear of encumbrances except those mentioned, but that the property was subject to numerous liens and judgments, and further that there were outstanding bills against the property not disclosed in a certain bulk sales affidavit; that it was represented that the corporation had marketable title to the property, when in fact it did not.

An amended complaint set forth additional causes of action claiming impossibility of performance by the corporation and the Jacobsens; failure of consideration; and that the corporation and Mr. and Mrs. Jacobsen are identical entities. In the amended complaint, the Jolleys sought to have the agreement and deed cancelled, to have title to the Lemhi County property quieted in them, and for damages.

The corporation and the Jacobsens in their answer presented counterclaims and crossclaims on the theory that they had fully complied with all terms and conditions of the agreement, but that the Jolleys had maliciously failed to secure the increase in the loan on the Lemhi county

property; that certain articles of farm machinery were in need of repair, and other pieces of equipment and titles to jeeps, and one truck were not delivered; that the Jolleys instituted the present action for malicious purposes, to deprive the corporation of the opportunity to secure a loan from another insurance company on the Lemhi county property; lastly, that the Jolleys had made damaging and derogatory statements concerning Fred R. Jacobsen; these parties then prayed for dismissal of the complaint, for attorneys fees, and special and punitive damages.

The United States of America, filed issues asserting entitlement to certain tax liens on the Saratoga Hotel.

On the issues framed by the pleadings, the cause was tried to the court. Whereupon the trial court after rendition of its memorandum decision, entered findings of fact, conclusions of law, and judgment and decree. In substance, the trial court found that the parties to the agreement investigated the respective properties, made several preliminary agreements, and relied on their own investigations, (which finding nullified the claim of false representations. Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559); that the agreement was substantially executed and the properties transferred to the respective parties by regular warranty deeds and bills of sale; that the Jolleys dealt with the corporation in all of its agreements and transactions, and that the Jolleys suffered no damage through claimed defects in corporate organization or failure to file articles of incorporation with the County Recorders.

The trial court also made specific findings as to certain items the corporation owed the Jolleys, and on items Jolleys owed the corporation; that the Jolleys did not execute certain deeds to effect a partition of property conveyed, nor did they transfer title to two jeep pick-ups, nor assign a contract of sale on another truck, nor deliver certain pieces of farm machinery covered by the agreement. Based on these findings, the conclusions of law provided that the Jolleys have judgment against the corporation for $25,412.98, and that the judgment be a lien against the Lemhi County properties; that the agreement was executed insofar as transferring the real property; that the corporation is a legal entity and the Jolleys cannot challenge its corporate authority; that the corporation have judgment against the Jolleys for certain items, and that the Jolleys deliver warranty deeds to certain lands to be partitioned by agreement with others; that the Jolleys' prayer to quiet title be denied; that the corporation's and Jacobsen's prayers for damages be denied; that the cause be dismissed as to the defendants Fred R. Jacobsen and wife. Judgment and decree

was entered in accordance with the conclusions of law.

Appellants by their assignments of error contend that the trial court erred in failing to recognize there was no valid agreement because the condition precedent, requiring appellants to be able to obtain financing, was not complied with, and erred in failing to rescind the contract, and order reconveyance of the respective properties; also erred in ruling that certain judgments of record were not clouds on the title and liens against the Saratoga Hotel; in failing to pierce the corporate veil of Idaho Securities, Inc., and in failing to find that Fred R. Jacobsen and Mary Louise Jacobsen and the Idaho Securities for all intents and purposes were one and the same entity; in failing to find that the respondents did not furnish evidence of title as required by the contract, which was a condition subsequent to a valid exchange of the properties.

■ Resolution of these various questions requires consideration of the rule that the acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement. There is a generally recognized exception to the foregoing rule which exception relates to collateral stipulations of the contract, which are not incorporated in the deed. A good explanation of this rule and exception is to be found in Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P.2d 377 (1946), wherein the court stated:

"The general rule with regard to merger in such cases was stated in Norment et ux. v. Turley et al., 24 N.M. 526, 174 P. 999, 1000 as follows: 'It is a well established rule of law that prior stipulations are merged in the final and formal contract executed by the parties, and this rule applies to a deed or a mortgage based upon a contract to convey. When a deed is delivered and accepted as performance of the contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties. Devlin on Real Estate, § 850a. The rule is followed in practically all the cases.' Also see annotation in 84 A.L.R. 1008 et seq.

"An exception to this general rule is likewise stated in the Norment Case in the following language: 'There is an exception to the rule stated, which is that the contract of conveyance is not merged upon execution of a deed where under the contract the rights are conferred collaterally and independent of the deed;

there being no presumption that the party in accepting the deed intends to give up the covenants of which the deed is not a performance or satisfaction. Where the right claimed under the contract would vary, change, or alter the agreement in the deed itself, *or inheres in the very subject-matter with which the deed deals, a prior contract covering the same subject-matter cannot be shown as against the provisions of the deed.'* Also see annotation, 84 A.L.R. division IV p. 1017 et seq.

" * * *

"In the absence of fraud, mistake, etc., the following stipulations in contracts for the sale of real estate are conclusively presumed to be merged in a subsequently delivered and accepted deed made in pursuance of such contract, to wit: (1) Those that inhere in the very subject-matter of the deed, such as title, possession, emblements, etc; (2) those carried into the deed and of the same effect; (3) those of which the subject-matter conflicts with the same subject-matter in the deed. In such cases, the deed alone must be looked to in determining the rights of the parties.

"But where there are stipulations in such preliminary contract of which the delivery and acceptance of the deed is not a performance, the question to be determined is whether the parties have intentionally surrendered or waived such stipulations. If such intention appears in the deed, it is decisive; if not, then resort may be had to other evidence.

" * * *

"The authorities may perhaps be reconciled by a determination of what are 'collateral stipulations'. If the stipulation has reference to title, possession, quantity, or emblements of the land, it is generally, but not always, held to inhere in the very subject-matter with which the deed deals, and is merged therein."

For other authority see: Annot: 84 A.L.R. 1008; 38 A.L.R.2d 1310; 8A Thompson on Real Property (1963 replacement) 331, § 4458; 55 Am.Jur. 937, Vendor and Purchaser, § 543; 26 C.J.S. Deeds § 91c, p. 842.

This court has had before it a consideration of the general rule and its recognized exception. In the case of Christiansen v. Intermountain Assn., 46 Idaho 394, 267 P. 1074, the question was whether an agreement to furnish an abstract of title showing clear title which agreement to convey real estate became merged upon acceptance of a deed to the property. Therein this court stated:

"It seems to be well settled that ordinarily the provisions of an executory contract for the sale of land and all prior negotiations leading up to it are merged in a subsequent deed. (citing cases.)

"It will be presumed that it was the desire of the parties to consider the deed as the final expression of their mutual intentions. If the covenants in the contract relate to the conveyance, or inhere in the very subject-matter with which the deed deals, they are merged in the deed and any reference to them in the deed will be considered as final, even though the deed contradict the contract. (citation)

"To the general rule that there is a merger of prior covenants and agreements in the deed, there is a well-recognized exception. Where the covenants in the contract do not relate to the conveyance, but are collateral to and independent of the conveyance, they are not merged in the deed, in so far as the deed is only a part performance of the contract. (citations)

"A grantee may accept a deed as full performance of a prior contract, even where it is not such; but whether a deed has been so accepted is, in the final analysis, a matter of intention. It would seem that where the covenants are of this nature—that is, collateral to the covenants of conveyance—there is no presumption that either party intended to give up the benefit of the covenants of which the conveyance is not a performance. (citations) In such a case the contract is kept alive, and an action on it may be brought in case of its breach, independent of any possible recovery on the warranties of the deed.

"* * *

"The precise question in the case at bar is whether the covenant to provide an abstract was merged in the deed. Referring to the criterion laid down in Bull v. Willard supra [9 Barb (N.Y.) 641], it would seem that there was no merger. An abstract does not relate to the title, possession, quantity, or emblements of the land. It is a graphic history of the title, but has nothing to do with the title itself. In a real estate transfer, the validity or invalidity of the title to the premises is not affected by the giving or withholding of an abstract.

"* * *

"We conclude that the agreement to furnish an abstract in the case at bar was not merged in the deed. The only question remaining for consideration is the measure of damages.

"The covenant relied on provides for the furnishing of a particular kind of an abstract, namely, one showing the property to be 'clear of any and all liens.' The furnishing of any sort of an abstract would not fulfill the requirements of this covenant. The removal of all encumbrances would be a prerequisite to the furnishing of the kind of an abstract contemplated. Specifically it would have been necessary to have paid the 1921–1922 taxes. Respondent having paid the taxes, it was proper to allow a recovery both for the reasonable value of an abstract, found by the trial court to be $50.00, and

also for the taxes paid, amounting to $176.11, together with interest thereon at 7 per cent from June 29, 1925."

Based on Christiansen v. Intermountain Assn., supra, we conclude that the agreement to furnish the abstract was not merged by the Jolleys accepting the corporation deed and that as a prerequisite to furnishing such abstract, the corporation was required to furnish one showing the "Title of the transferror to be good and marketable and free and clear of all encumbrances except those set forth herein".

Presented at the trial were a number of exhibits that appellants assert were liens and encumbrances against the corporation's title to the Saratoga Hotel, which were not excepted by mention in the agreement and deed. These included: Exhib. 6, a judgment and decree of divorce in the case of Elsie G. Jacobsen v. Fred R. Jacobsen, dated May 2nd, 1958, wherein Elsie Jacobsen was awarded $25,000, payable in monthly installments, pursuant to which a Writ of Execution, Exhib. 7, issued out of the Canyon County district court on June 17, 1963, and pursuant to which Notice of Levy on real estate, Exhib. 8, (including the Saratoga Hotel) was filed and recorded in the Recorder's office on June 18, 1963; Exhib. 12, a District court judgment in Canyon County, in favor of Arnold Machinery Co., Inc., and against Fred Jacobsen, dated June 15, 1962; Exhib. 13, a Dis-

trict Court judgment in Canyon County in favor of L. A. Adams and wife against Fred R. Jacobsen, dated November 7, 1961; Exhib. 14, a District court judgment in Canyon County in favor of Farmer Oil Wholesale Company against Fred Jacobsen, dated January 19, 1962. Various other exhibits reflecting sums due the United States Government, totalling $4,653.05; an exhibit reflecting State and county taxes delinquent for years 1960, 1961, 1962; and also an exhibit reflecting a water charge.

The trial court held that the corporation owed the appellants the sum of $25,412.98, and entered judgment accordingly. This judgment was based on the trial court's findings of fact that the corporation owed the following items:

| | |
|---|---|
| Past due payments on the Graves mortgage | $ 3,100.00 |
| Payments due on an ice machine | 285.00 |
| Past due real estate taxes | 10,230.00 |
| Federal Tax Liens | 4,653.05 |
| Unpaid account listed in Bulk Sales Affidavit | 4,335.23 |
| Payments the corporation agreed to make on machinery for which appellants were liable | 2,809.70 |
| Total | 25,412.98 |

The trial court's memorandum decision pointed out that the corporation recognized its obligation to pay the back taxes on the hotel, the back payment on the mortgage

and balance due on the ice machine, and the trial court's findings in that regard are fully sustained by the evidence. The trial court's memorandum decision pointed out that the Federal tax liens in the sum of $4,653.05 were a lien existent against the hotel property, and that the corporation admitted owing $4,335.23 of unpaid bills. Again the trial court's findings of fact in this regard are sustained by the evidence insofar as the unpaid bills are concerned. The Federal tax liens will be hereinafter discussed.

█ As to the assertion by appellants that the judgment in the divorce action of Elsie G. Jacobsen, against respondent Jacobsen was an encumbrance, the record discloses that under date of September 20, Elsie G. Jacobsen executed a release and waiver duly acknowledged by her, Exhib. 10, whereby she waived any interest, lien or right in and to certain real property described therein, which included the Saratoga Hotel property. This release and waiver was recorded in the Canyon County Recorder's office two days later. On October 14, 1960, Elsie G. Jacobsen executed another release and waiver, purporting to amend the first release and waiver. This second release and waiver, however, described the same property as the first, including the Saratoga Hotel property, but the description to that property was lined out. This second release was recorded ten days after it was executed. The trial court held that the Elsie G. Jacobsen judgment was a personal judgment against Fred R. Jacobsen and was not a lien against the Saratoga Hotel property. With this conclusion of the trial court we agree. Elsie G. Jacobsen, by the first release she executed, Exhib. 10, released and waived any lien she might claim against this property. There was no proof offered or submitted that this release was executed by reason of any excusable mistake or error, or prompted by an overreaching or fraud; further there was no proof that any consideration was given to reinstate the purported lien against the Saratoga Hotel.

█ As to the other judgments taken against respondent Jacobsen, including those evidenced by Exhib. 12, 13 and 14, the record fails to show that these judgments or any of them or any transcripts or abstracts of them, were ever recorded as required by I.C. §§ 10–1108 to 10–1110, in order to create a lien. Messenger v. Burns, 86 Idaho 26, 382 P.2d 913. The Arnold Machinery Co., Inc., judgment Exhib. 12, was entered June 15, 1962; the L. A. Adams judgment, Exhib. 13, was entered November 7, 1961, and the Farmer Oil Wholesale Company judgment was entered January 19, 1962. Articles of incorporation of the respondent corporation were dated March 15, 1961, and deed of the Saratoga Hotel to the corporation executed March

30, 1961, prior to entry of any of those judgments. The record fails to disclose any action brought under the provisions of the Bulk Sales Act (I.C. § 64–701 et seq.) to secure judgment against the corporation by reason of the prior transfer of the hotel to the corporation by Jacobsen and his wife. The record discloses that there was a bulk sales affidavit executed and delivered by the corporation to the Jolleys in conformity with the June 16, 1963, agreement. The trial court did not err in its determination that these judgments did not constitute liens against this property.

Appellants contend the trial court erred in not piercing the corporate veil, and in not holding that Idaho Securities, Inc., and Fred R. Jacobsen and Mary Louise Jacobsen, were one and the same entity and in not holding that all judgments against Fred R. Jacobsen, were liens against the property standing in the name of the corporation.

This contention must be evaluated in light of respondent corporation's contention that appellants, having dealt with it as a corporation, having executed an agreement with it as a corporation, having executed a warranty deed to it as a corporation, and having accepted its deed as a corporation, is now estopped to deny its existence.

In Hayhurst v. Boyd, 50 Idaho 752, 300 P. 895, this court pointed out that as a general rule a corporation will be regarded as a legal entity and that the courts, acting cautiously and only where circumstances justify it, may disregard the fiction of the corporate entity. This determination is based on the express limitation on the personal liability of stockholders of a corporation as set forth in Idaho Const. Art. 11, § 17 and I.C. § 30–124. In the Hayhurst case this court pointed out that:

"To warrant casting aside the legal fiction of distinct corporate existence, it is not enough to say that T. O. Boyd may have been the holder of a majority of stock in the two corporations bearing his name and dominated and controlled the business and policies of the Boyd Hospital, but it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. (citing cases.)"

See: Schenley Distillers Corp. v. United States, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181; Elenkrieg v. Siebrecht, 238 N.Y. 254, 144 N.E. 519, 34 A.L.R. 592 (1924); Annot: 1 A.L.R. 610; 34 A.L.R. 597.

Correlated with this expression is the general rule that a person who deals with a corporation as such is estopped to deny the corporate existence. 18 Am.Jur.2d Corporations § 76, pg. 616; 18 C.J.S. Cor-

**388**

porations §§ 108 and 109, pp. 503, 504, 508; cf. Murtaugh Highway District v. Twin Falls Highway District, 65 Idaho 260, 142 P.2d 579; A. C. Frost & Co. v. Coeur d'Alene M. Corp., 60 Idaho 491, 92 P.2d 1057; Ferguson Fruit & Land Co. v. Goodding, 44 Idaho 76, 258 P. 557. In Edwards v. Belknap, 66 Idaho 639, 166 P.2d 451, Judge Budge in writing the majority opinion quoted from 8 Fletcher Cyclopedia Corporation § 3958, as follows:

"A person who conveys real property to an association as a corporation cannot avoid the conveyance by denying the corporate existence of the grantee * * *".

In the instant case, appellants not only conveyed real property to Idaho Securities, Inc., a corporation, but also accepted a deed from it in that capacity. Throughout the entire time of the transaction, all negotia-

tions by appellants were with the Jacobsens, acting not as individuals, but on behalf of the Idaho Securities, Inc., and thus no error appears in the trial court's refusal to pierce the corporate veil.

■■ Appellants also point out that the corporation did not file articles of incorporation with the county recorder of either Canyon or Lemhi County; appellants assert that by reason thereof respondent corporation was not authorized to purchase, locate or hold real property and carry on the transactions which are the subject of this action. In support of this contention, appellants cite I.C. § 30-108(4), I.C. § 30-110,[1] Marshall-Wells Co. v. Kramlich, 46 Idaho 355, 267 P. 611, and Allen Steel Supply Co. v. Bradley, 89 Idaho 29, 402 P.2d 394, 403 P.2d 859. Neither of the cited cases is in point here, since in each, the

1. I.C. § 30-108:
* * *
"4. No corporation formed under the provisions of this act shall purchase, locate or hold real property in any county of this state without filing a copy of its articles of incorporation, certified by the secretary of state, in the office of the county recorder of the county in which such property is situated, within sixty days after such purchase or location is made. Any corporation failing to comply with the provisions of this section must not, while so in default maintain or defend any action or proceeding in relation to such real property."
"I.C. § 30-110:
"1. A corporation formed under this act shall not incur any debts or begin

the transaction of any business, except such as is incidental to its organization, or to the obtaining of such subscriptions to or the payment for its shares until a triplicate original of the articles of incorporation has been filed for record in the office of the county recorder as provided in section 30-108.
"2. If a corporation has transacted any business in violation of this section, the officers who participated therein and the directors, except those who dissented therefrom and caused their dissent to be filed at the time in the registered office of the corporation, or who, being absent, so filed their dissent upon learning of the action, shall be severally liable for the debts or liabilities of the corporation arising therefrom."

articles of incorporation had not been filed with the Secretary of State, and thus there was no *de facto* corporation. In the instant cause, articles of incorporation had been issued by and filed with the Secretary of State 2 years prior to the time the agreement between appellants and the corporation was entered into. The failure was not in failing to obtain and file articles of incorporation, from which time the corporate existence begins (I.C. § 30–108 sub. 2), but in failing to file certified true copies of the articles of incorporation with the offices of the respective county recorders.

The trial court in its memorandum decision in regard to the right of the corporation to hold and transfer property and incidents thereto, pointed out that appellants could not raise this question after having dealt with the corporation, accepted its deed and recorded it; therein it is stated:

"About the corporation's inability to hold and transfer property and the incidents thereof, suffice it to say that such cannot be raised by the plaintiffs who have dealt with it, have accepted the deed and recorded it, and who make only a collateral attack on it, and who are not hurt by this specific matter anyway."

This viewpoint the trial court reiterated in its findings of fact, and held in its conclusions of law that respondent corporation was a legal entity, and that its existence,

right to hold and transfer property and exercise its corporate authority, may not be challenged by the appellants. With this ruling we concur. Upon issuance by the Secretary of State of the certificate of incorporation (I.C. § 30–108, sub. 2) the corporate existence begins. If the requirements of I.C. § 30–108, sub. 4, are not complied with by filing a certified copy of the articles of incorporation in the county where real property is held, the deed is not void, inasmuch as that subsection authorizes compliance by filing the articles within sixty days. The penalty for non-compliance is provided as follows: "Any corporation failing to comply with the provisions of this section must not, while so in default maintain or defend any action or proceeding in relation to such property." A litigant who desires to assert such provision as the basis of a defense to a corporate action, counterclaim or cross-claim, must present such defense by pleading or motion. I.R.C.P. 12 (b), and failing so to present such defense, under the provisions of I.R.C.P. 12(h) it is waived.

The record fails to sustain the contention that appellants were entitled to rescission of the exchange of deeds. See: Fellows v. Evans, 33 Or. 30 (1898), 53 P. 491; Thomas v. Dunnean, 75 Colo. 216, 225 P. 253 (1924). The trial court by its judgment imposed upon respondent corporation an obligation to pay to appellants a sum that would recompense them

for sums they would have been obligated to pay except for the fact that a mortgage foreclosure action was instituted. Whether appellants have properly proven damages caused by respondent corporation's breach of the covenant to convey good title is not before this court, for no cross-appeal was taken. Nor is there any question before this court, whether respondent corporation by reason of the obligation to pay appellants a sum equal to the amount of the items owing to the United States may also be required to pay such sum to the United States.

Respondent United States of America in its brief assigns certain errors of the trial court. However, the respondent did not cross-appeal, and the issues thus attempted to be raised are not before this court.

Other errors assigned by appellants, have been considered, but are deemed only as raising issues already covered by the foregoing opinion.

■■■ Under the judgment the appellants are ordered to deliver to the corporation a certain warranty deed executed by a certain partnership which is not a party to this action. That provision of the judgment is unenforceable, for the reason that appellants by their deed have divested themselves of all interest in the real property, which was to have been partitioned under an agreement with such partnership. That

provision must be stricken from the judgment. The judgment is so modified, and as modified is affirmed.

Costs to respondents.

TAYLOR and SMITH, JJ., concur.

KNUDSON, J., sat at the argument, but retired from office prior to the decision.

McQUADE, Justice (dissenting).

The majority opinion makes reference to several terms in the contract, one of which has been selected as not merging in the deed. Sufficient authority is cited for this exception to the general rule that all conditions relating to a transfer of property are merged in the deed upon its delivery.

A condition in the agreement between the parties for the conveyance of their properties not included by the majority opinion within the exception to the general rule is:

"It is understood and agreed that this entire transaction is conditional upon the Buyers [the Jolleys] being able to increase the Travelers Insurance Company loan on the Lemhi County property in the additional amount of $10,000.00, as a minimum. This is to be done in the Buyers name, and the Seller [Idaho Securities, Inc.] is to assume and pay in full this additional obligation, promptly and before any delinquency. Any such refinancing costs are to be promptly paid

by the Seller. The gross proceeds of this loan are to be disbursed as follows: $10,000.00 to the Buyers, which sum the Buyers are to use to pay the back real estate taxes on the Saratoga Hotel property, and any gross sum over $10,000.00, to the Seller."

I agree with the majority that those conditions which are to be performed in the future, separate and distinct from the deed, are not merged therein. It was said in Reid v. Sycks et al., 27 Ohio St. 285 (1875):

"There is no presumption that a party, in giving or accepting a deed, intends to give up the covenants of which the deed is not a performance or satisfaction."

The June contract between the Jolleys and Idaho Securities, Inc., was conditioned on additional $10,000 financing which Jolleys were to obtain. It was the express agreement of both parties that in the absence of Jolleys' obtaining $10,000 or more through a refinancing of the Lemhi County ranch, the contract was null and void and their properties would not be exchanged. See Morris v. Whitcher, 20 N.Y. 41 (1859); and Price v. Woodward-Brown Realty Co., Sup., 190 N.Y.S. 561 (1921).

After they were unable to obtain refinancing as provided for in the contract, the Jolleys communicated this circumstance to Jacobson in July of 1963. Jacobson in turn attempted without success to obtain sufficient monies to fulfill the contractual requirement. In October the Jolleys commenced this action for a rescission of the deeds and return of the properties to the respective parties. It cannot be said that Jolleys were guilty of laches in their conduct or in commencing this action. Rather, Jacobson takes the view that had not the action been commenced, he could have secured the additional financing. Apparently the majority opinion presumes that this portion of the agreement was merged in the deed. There is no evidence in the record supporting the theory that the Jolleys abandoned the benefit of this covenant. The evidence does establish that the Jolleys diligently brought to the attention of Jacobson the difficulty in securing an additional loan and also made known the various claims being made against the hotel property. The Jolleys had a right to ask for rescission of the contract and return of their ranch property. Christiansen v. Intermountain Assn., 46 Idaho 394, 267 P. 1074 (1928). A case which has substantially the same factual circumstances as the case at bar is that of Dunseath v. Hallauer, 41 Wash.2d 895, 253 P.2d 408 (1953). In the Washington case the parties by written contract agreed to an exchange of properties and provided in the agreement that the seller of each was to assume the risk of any damage to the property prior to closing of the deal. Deeds were exchanged. The

Washington court held that the assumption of risk provision of the contract was not merged in the deeds. See also Mayer v. Sumergrade, 111 Ohio App. 237, 167 N.E.2d 516 (1960).

By reason of the failure to comply with the contractual provision, together with the additional encumbrances on the hotel property which had not been disclosed by Jacobson, the trial court should have found as a matter of law there were material breaches of the contract. Such material breaches significantly affected the consideration paid for the property. The judgment denying rescission should be reversed.

## ON PETITION FOR REHEARING.

McFADDEN, Chief Justice.

Herein, the trial court found that the initial agreement between the parties was substantially executed and the properties transferred to the respective parties by regular warranty deeds and bill of sale. Furthermore the trial court denied their claim of misrepresentation.

Prior to the time appellants executed and delivered their deed to the Lemhi County property to the respondent and accepted and recorded the deed to the Saratoga Hotel executed by respondent, they were in a position to first have demanded compliance with the provisions of the contract for a new bulk sales affidavit, abstract of title showing good marketable title, and to have proceeded with the processing of the increase of the loan secured by the mortgage on the Lemhi County property. After consultation with the attorney representing them during the transaction, (an attorney other than those representing them on this appeal, who were not in anyway connected with the preliminary negotiations, execution of the agreement, or delivery and recording of the deeds), they determined to record the deed to the Saratoga Hotel. This they did for the stated purpose of avoiding other liens being filed, which is indicative of an intent to accept the title. By this action of accepting and recording the deed to the Hotel and delivering the deed to the Lemhi County property, they eliminated their ability to comply with the provisions of the contract for the increase of the loan, and they cannot now be heard to complain in that regard.

The trial court by its findings of fact, conclusions of law and decree, in addition to denying appellants' claim for rescission of the contract on the asserted grounds of misrepresentation, also found and concluded that the agreement was executed by acceptance and recording of the deed. Under such circumstances where the deed had been delivered and the vendee is in possession, in the absence of fraud or misrepresentation, the purchaser is relegated to this action for damages for defects in the ven-

dor's title. Johnson v. Green, 54 So.2d 44 (Fla.1951); James v. Jacobsen, 93 Ga.App. 233, 91 S.E.2d 527 (1956); Nixon v. Franklin, 289 S.W.2d 82 (Mo.1956); 91 C.J.S. Vendor & Purchaser § 161b, p. 1122; Annot: 50 A.L.R. 180. Herein, the court awarded appellant damages, and properly denied equitable relief by way of rescission.

Appellants orally amended their complaint to allege the corporation was not authorized to do business in Idaho, by reason of its failure to file its articles of incorporation in Canyon County. As previously pointed out, appellants were estopped to deny its corporate *authority to transact business*. Appellants also cited and relied upon the provisions of § 30–108. Subsection (4) thereof bars a noncomplying corporation from maintaining or defending an action in relation to real property. The amendment to the complaint denying the corporate authority to transact business did not present the issue of its right to defend the action, or pursue its counter-claim, which issue should have been presented by pleading or motion under I.R.C.P. § 12(b).

The petition for rehearing is denied on June 7, 1966.

TAYLOR and SMITH, JJ., concur.

KNUDSON, J., sat at the argument but retired from office prior to the decision.