IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37893

CHRIS BELSTLER and DANA BELSTLER, )
husband and wife, )
                              )
                              )         **Coeur d'Alene, September 2011**
    **Plaintiffs/Counterdefendants/** )
    **Appellants/Cross-Respondents,** )
                              )         **2011 Opinion No. 117**
                              )
**v.**                            )         **Filed:  November 10, 2011**
                              )
**KAREN SHELER (CONINE), and** )
**HOWARD CONINE, husband and wife,** )     **Stephen W. Kenyon, Clerk**
                              )
    **Defendants/Counterplaintiffs/** )
    **Respondents/Cross-Appellants.** )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. James R. Michaud and Hon. Lansing L. Haynes, District Judges.

Memorandum decisions regarding easements, <u>vacated</u> in part and <u>remanded.</u>

Arthur B. Macomber, Coeur d'Alene, argued for appellants.

Dodson & Raeon Law Offices, Coeur d'Alene, for respondents.    Charles M. Dodson argued.

---

BURDICK, Chief Justice

This case concerns the existence of two disputed roadways or easements over the Appellants Belstlers' property benefitting Respondents Conines.  In resolving the appeal, we address the separate holdings of the Honorable James R. Michaud's original Memorandum Decision finding express easements over both the northern and southern easements and a prescriptive easement upon the northern easement; and the Honorable Lansing L. Haynes' subsequent Memorandum Decision after a motion for reconsideration and amendment of the original decision finding no express easements.  We vacate in part, and remand.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellants Dana Belstler and Chris Belstler (the Belstlers), husband and wife, reside on a tract of land in Kootenai County.  Respondents Karen Sheler and Howard Conine (the Conines),

husband and wife, live in Washington and own real property that lies east of and abuts the Belstlers' Property. Both properties are accessed from Chandler Lane which begins just west of the Belstlers' southern boundary, heads northwest through other tracts of land, then loops around and heads east to the Belstlers' western boundary, and then continues northeast through the Belstlers' and the Conines' properties. The location and slope of Chandler Lane across the Conines' property does not function well with the layout of the Conines' property and the location of their improvements. The Conines' property consists of a flat upper area and a flat lower area, with steep land between the upper and lower areas. The Conines can access their property across the two disputed roadways located on the Belstlers' property. The southern road begins just north of the beginning of Chandler Lane and then heads northeast through a small tract of land owned by the Worley Fire District and the southern portion of the Belstler property. The northern road begins near where the Chandler Lane enters the western portion of the Belstler property and heads southeasterly across Belstlers' property to the improvements located on the Conine property.

The parcel now owned by the Belstlers was part of a larger tract of land owned and subdivided by Vaughn and Geraldine Sanders (the Sanders) in 1979. The Sanders created the roadway easement now known as Chandler Lane over the larger tract of land. On June 1, 1988, the Sanders entered into a title retaining contract and warranty deed with Kenneth Henry (Henry) for the property now owned by the Belstlers. The agreement for the sale between Sanders and Henry was recorded on June 8, 1988. A successively recorded document was labeled "Mutual Agreement for Easement for Ingress and Egress" (Easement Agreement). The Easement Agreement is dated June 6, 1988, and signed by the Sanders and Henry. The document purports to grant an easement from Sanders to Henry, and also the grant of an easement from Henry over the "Southerly part" and "Northerly part" of the "property that [Henry] is purchasing from [the Sanders]" to one of the Conines' predecessors in title, Linda Merwin. On June 3, 1988, the Sanders conveyed a tract of land to the Worley Fire District, over which the southern roadway ultimately reaches the southern portion of the Conines property; the warranty deed was recorded June 8, 1988, subsequent to the sale agreement and Easement Agreement. In June 1989, the warranty deed conveying the tract of land from Sanders to Henry (Sanders-Henry Deed) was recorded subject to "[a]ny and all easements, conditions and restrictions of record and easements of ingress and egress." On September 19, 2005, Henry conveyed the tract of land to the

Belstlers. The Conines received title to their property on June 30, 1998, after Merwin had conveyed the property in 1990 to a third party.

Since purchasing the property in 1998, the Conines have used the upper and lower roads to cross the Belstler property and access their property. In the summer of 2006, the Belstlers requested that the Conines cease using both roads. The Conines ceased using the lower road, which had been cabled and locked by the Belstlers, but refused to cease using the upper road. The parties held discussions but were unsuccessful in resolving the dispute.

On April 9, 2007, the Belstlers filed a complaint, seeking to relocate the Conines' access and to permanently enjoin the Conines from using the current access. On August 8, 2007, the Conines answered that they have either an express easement of record or a prescriptive easement across the Belstlers' property. The Conines also counterclaimed, seeking a determination of their rights on the road and alleging damages due to the Belstlers seeking to unlawfully and unreasonably restrict their use of the road. On February 3, 2009, the Belstlers filed an amended complaint, asking the district court to determine the meaning of certain recorded documents and seeking to quiet title to the easement areas and enjoin defendants from using the easements. On February 17, 2009, the Conines filed an amended answer and counterclaim, seeking a determination that they possess an easement by prescription, an implied easement, or an express easement.

On September 21, 2009, a four day trial commenced before Hon. James Michaud. At trial, the Conines withdrew their claim for an implied easement. According to the district court, the parties agreed that the district court should adjudicate whether the Belstlers may move the easement pursuant to I.C. § 55-313 to a location further north on their property.

On December 30, 2009, the district court issued the first decision at question in this appeal. The district court found that the Easement Agreement expressly granted easements to both the upper roadway and the lower roadway with the intent to serve the Merwin property. In light of the Easement Agreement, as well as other documents, the district court found that the Conines, as successors in interest to Merwin, had express easement rights to both the upper and lower roadway and accordingly denied the Belstlers' claims to quiet title.

The district court also found that the Conines proved that they had a prescriptive easement to the upper road but not the lower road. Noting that the legislature modified the prescriptive claim statute from a five-year requirement to a twenty-year requirement in 2006, the

3

district court determined that the Conines' ten-year period of use sufficed for the prescriptive period, because the Conines' rights vested in 2004 (five years after they purchased the property and began using the upper road) which was prior to the filing of this lawsuit in 2006.

Finally, pursuant to I.C. § 55-313, the district court enjoined the Belstlers from relocating the upper road upon determining that the proposed relocation is unreasonable and would injure the Conines due to the steep grade on which they would have to build a road.

On January 14, 2010, the Belstlers filed an amended motion for reconsideration pursuant to I.R.C.P. 52(b), oral argument was heard on March 16, 2010, and on April 21, 2010, the district court issued its decision. On reconsideration, Hon. Lansing Haynes affirmed Hon. James Michaud's ruling that the Conines hold a prescriptive easement for the upper road but held that no express easements existed. The district court held that the trial judge erred in concluding that the Easement Agreement was a collateral stipulation to the Sanders-Henry Deed, which therefore did not merge with the Sanders-Henry Deed. Rather, the district court held that the Easement Agreement is not a collateral stipulation and, therefore, the agreement merges with the Sanders-Henry Deed. The Belstlers timely appealed to this Court, followed by a cross appeal by the Conines.

## II.    STANDARD OF REVIEW

For motions to amend findings or to amend a judgment, this Court reviews under an abuse of discretion standard and a judgment will not be disturbed on appeal where substantial and competent evidence is present to support the court's findings. *Miller v. Miller*, 113 Idaho 415, 419, 745 P.2d 294, 298 (1987); *Johnson v. Edwards*, 113 Idaho 660, 662, 747 P.2d 69, 71 (1987); *Bair v. Barron*, 97 Idaho 26, 32, 539 P.2d 578, 584 (1975). "A trial court does not abuse its discretion if it (1) recognizes the issue as one of discretion, (2) acts within the boundaries of its discretion and applies the applicable legal standards, and (3) reaches the decision through an exercise of reason." *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008) (citations omitted). As for questions of law, this Court exercises free review. *Castorena v. General Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010).

## III.    ANALYSIS

**A.  The district court erred on reconsideration in finding that the Conines did not have any express easements on the Belstler Property.**

On cross appeal, the Conines argue that the district court erred on reconsideration in finding that the Conines did not have any express easements on the Belstler Property. They also

contend that the district court erred in determining that the Sanders-Henry Easement Agreement merged with the Sanders-Henry Deed. We agree.

1. Inapplicability of Merger

In its initial decision, the district court determined that the Easement Agreement was a collateral stipulation to the Sale Agreement and, therefore did not merge with the Sanders-Henry Deed. On reconsideration, the district court ruled that the Sanders-Henry Easement Agreement was not a collateral stipulation and, therefore, the Easement Agreement did merge with the Sanders-Henry Deed.

In both its initial decision and on reconsideration, the district court relied on the merger doctrine as set forth in *Jolley v. Idaho Sec., Inc.*, 90 Idaho 373, 414 P.2d 879 (1966). The relevant considerations of the merger doctrine as it applies to a real estate purchase agreement and deed have recently been explained in *Fuller v. Callister*:

> [T]he acceptance of a deed to premises generally is considered as a merger of the agreements of an antecedent contract into the terms of the deed, and any claim for relief must be based on the covenants or agreements contained in the deed, not the covenants or agreements as contained in the prior agreement.
>
> [*Jolley,* 90 Idaho at 382, 414 P.2d at 884.] However, "[t]here is a generally recognized exception to the foregoing rule which exception relates to collateral stipulations of the contract, which are not incorporated in the deed." *Id.* If a stipulation makes reference to title, possession, quantity or emblements of land it will generally be considered to inhere to the subject matter of a warranty deed, and shall be considered merged and, thus, not a collateral stipulation. *Id.* at 383, 414 P.2d at 885.

150 Idaho 848, __, 252 P.3d 1266, 1271 (2011). Both district court level decisions considered whether the Easement Agreement was a collateral stipulation to the Sale Agreement between the Sanders and Henry.

The Easement Agreement, dated June 6, 1988, purports to grant certain easements on the Belstler Property from the predecessor in title, Kenneth L. Henry, to the Conines' predecessor Linda Merwin. The Easement Agreement was recorded on June 8, 1988, subsequently numbered one instrument number after the Sale Agreement between Sanders and Henry. The Easement Agreement contains no language mentioning the Sale Agreement. The Sanders-Henry Deed was recorded on June 9, 1989, after the remaining balance of the purchase price was paid. The Sanders-Henry Deed did not make reference to the Easement Agreement or the easements

5

therein, but did include language that it was subject to all easements of record and easements of ingress and egress.

Both judges' interpretation of the Easement Agreement as a collateral stipulation to a real estate purchase agreement was unnecessary. This Easement Agreement was for the benefit of a third party stranger to the sales contract (Merwin) and this is collateral to the Sale Agreement. No argument was offered to show how the doctrine of merger would even apply to an easement between Henry and Merwin. Additionally, at oral argument, counsel could not come up with a single instance of where an agreement between a non-party and a vendee of a sales contract would merge with a deed. Merwin was not a party to the Sale Agreement between the Sanders and Henry, and the Easement Agreement does not state it was in consideration of, or was a stipulation of, or incorporated into, the Sale Agreement. In the case at bar, no presumption arises that the acceptance of the deed was an execution of the Sale Agreement AND the Easement Agreement. In fact, as shown by the record, the Easement Agreement was between the Sanders, Henry, and Merwin, whereas the Sanders-Henry Deed was only between the Sanders and Henry. It hardly will be contended that the acceptance of the deed by Henry superseded his grant of the easements to Merwin; there was no merger that could operate to undo the easements.

2. <u>The district court's original decision regarding express easements was not in error.</u>

In its initial decision, the district court held that the two roadways for access in dispute were express easements.

> The sale agreement, the warranty deed, and the express easements created in Plaintiffs' Exhibit 15, and the deed from Sanders to Henry and Henry to Merwin creating the easements form the basis for the express easement benefiting the CONINES. Linda Merwin was a beneficiary under the arrangements. The express easements therefore benefitted Merwin. The CONINES are a successor in interest to Linda Merwin and have easement rights of ingress and egress over the disputed private driveway and the lower road across the southerly easement.

Although the Easement Agreement itself may not have been ideally executed, it involved the conveyance by the legal owner, the Sanders, and the equitable owner, Henry, of the northerly and southerly easements to Merwin, the Conines' predecessor in title. This, along with the fact that the Sanders-Henry Deed was subject to easements of record and easements of ingress and

6

egress leads this Court to hold that the record includes substantial and competent evidence to support the district court's holding of express easements over the Belstlers' property.[1]

**B. The district court did not err in enjoining the Belstlers from relocating the private driveway easement.**

1. <u>The district court had jurisdiction to decide this issue.</u>

The Belstlers argue that the district court did not have subject matter jurisdiction to enjoin any rights pursuant to I.C. § 55-313 to relocate an easement found to exist by the court in its decision. They argue that the relocation issue was not pled or argued before the district court, and that although they pled relocation in their complaint, their amended complaint no longer referred to relocation as an issue. Additionally, they argue that there was no explicit reference to I.C. § 55-313 at trial, and that they did not agree to have the relocation issue decided at trial. Further, any references at trial to relocation, they argue referred to settlement and mediation offers.

The December 30, 2009 Memorandum Decision stated that the:

> [P]arties did extensively litigate the relocation issue at trial and the pleadings are deemed amended to include a claim for relocation of the northerly easement. Throughout the trial the parties took the position that if the court should determine that the easements claimed by the CONINES are valid easements, the Court should then determine whether or not the BELSTLERS could, pursuant to I.C. § 55-313 change the location of the northerly easement. Therefore, that issue is ripe for determination at this time by this Court.

Idaho Rules of Civil Procedure Rule 15(b) states in relevant part that:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

I.R.C.P. 15(b).

> The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements. Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue.
> . . .

---

[1] As we find that express easements exist, we find no reason to examine whether a prescriptive easement exists under a claim of right theory, *see Walker v. Hollinger,* 132 Idaho 172, 176-78, 968 P.22d 661, 665-67 (1998), and also decline to address at this time the issue of the statutory period for a prescriptive easement on appeal.

7

> The determination whether an issue has been tried with the consent of the parties is within the trial court's discretion, and such determination will only be reversed when that discretion has been abused. In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Hughes*, 142 Idaho at 483–484, 129 P.3d at 1232–1233 (citations and internal quotes omitted). Here, the district court stated that the parties litigated the issue of relocation at trial and deemed the pleadings amended to include a claim for relocation. The district court went on to explain that the issue came up throughout the trial and that it was "ripe for determination at this time." This evidences the court's perception of its discretion, and the record supports this finding.

During trial, Mr. Belstler was asked on cross examination if the court were to rule that the northerly road was an express easement, would it be his intention to move the easement. He answered that he had tried "numerous times to attempt to move it" and that the disputed area was not the only access to the buildings on the Conines' property, after which was a discussion of alternate approaches to the Conines' property off of Chandler Lane. On redirect, Mr. Belstler was asked about responses to his offers of relocation, and whether it would be acceptable if the district court were to rule that the Conines were not to "use the disputed driveway after a one-year period during which they need to construct new access to their property." Mr. Belstler replied that this arrangement would be acceptable. Also, at one point during the trial, the Conines' attorney expressed that one of the theories that he was proceeding on was "the issue whether or not a dominant or servient estate can move an easement and if so, how." Finally, there were several instances of unobjected-to testimony regarding the slope of Chandler Lane beyond Belstlers driveway and the elevation difference between Chandler Lane and the Conine's property. The record shows that the parties understood that the evidence regarding road elevation and slope was for the issue of relocation rather than considering it merely relevant evidence being introduced for other issues in the case. *See Hughes,* 142 Idaho at 483, 129 P.3d at 1232.

8

2. The district court's finding that relocation would injure the Conines is supported by substantial evidence.

The Belstlers argue that the district court did not have sufficient evidence to find that the Conines would be injured by the relocation of the easement. The district court held in its December 30, 2009, Memorandum Decision that the Belstlers were enjoined from moving the disputed upper road to locations shown on an exhibit presented at trial. This holding was based on the statutory language of I.C. § 55-313[2] allowing relocation of access where no injury would be caused. Findings that would cause injury within the meaning of the statute included testimony of the "unreasonably steep road grades" that would be necessary, the inconvenience and undue risk of harm for persons using the relocated access, and the fact that slopes depicted on the trial exhibit would be steeper than any on the existing road leading to the Conines' property. The record does show that the district court's findings were supported by substantial and competent evidence presented at trial. It could reasonably be concluded that the slope depicted by the easement was steep enough to cause injury. The exhibit depicts an area with slopes of 10.64%, 15.67%, 21.23%, and 24.59%; and during trial testimony was presented of the steep slopes and how dangerous the access would be for the Conines. This Court finds that there was substantial and competent evidence to reach the conclusion that the Belstlers should be enjoined from moving the upper road to any of the locations depicted on the exhibit presented at trial. The trial court is affirmed.

**C. The district court did not err in its determination of costs and neither party is entitled to attorney fees on appeal.**

1. Costs and attorney fees at the district court.

The Belstlers argue that the district court abused its discretion by failing to identify the prevailing party and explaining its decision when it awarded costs to the Conines and no attorney fees to the Belstlers. They argue that the Conines did not prevail in the overall action because they only prevailed on the issue of a prescriptive easement at the proceedings below. The district court's December 30, 2009 Memorandum Decision stated "that considering all claims and

---

[2] Idaho Code Section 55-313 states:

Where, for motor vehicle travel, any access which is less than a public dedication, has heretofore been or may hereafter be, constructed across private lands, the person or persons owning or controlling the private lands shall have the right at their own expense to change such access to any other part of the private lands, but such change must be made in such a manner as not to obstruct motor vehicle travel, or to otherwise injure any person or persons using or interested in such access.

defenses presented that the Conines are entitled to their costs but not attorney fees as this action was not frivolously or unreasonably pursued nor defended by the Belstlers." Following the April 21, 2010 Memorandum Decision on reconsideration, the final judgment ordered that the Conines were "awarded their costs incurred in the defense of this action, but are denied an award of attorney's fees," and that the Belstlers "shall pay their own fees and costs."

Rule 54(d)(1)(B) of the Idaho Rules of Civil Procedure states that "[i]n determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." The determination of the prevailing party by the district court is reviewed by this Court on appeal under an abuse-of-discretion standard. *Bybee v. Isaac,* 145 Idaho 251, 260, 178 P.3d 616, 625 (2008); *see also Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (abuse of discretion inquiry). Part of that discretion is the court's ability to decline an award to either side even if both parties are partially successful. *Smith v. Mitton,* 140 Idaho 893, 903, 104 P.3d 367, 377 (2004). The district court is not required to make a claim-by-claim analysis, but is to take an overall view of the case. *Crump v. Bromley,* 148 Idaho 172, 174, 219 P.3d 1188, 1190 (2009). Here, the district court took into consideration all claims and defenses, and within its discretion, awarded costs to the Conines but not attorney fees.

Attorney fees were generically sought by both parties in the pleadings, and only the Belstlers in their answer to the counterclaims cited to statutory provisions, I.C. §§ 12-120[3] and -121. Attorney fees sought under Section 12-121 are allowed under the discretion of the court by Idaho Rules of Civil Procedure Rule 54(e)(1) when the court finds the case was brought or defended in manner that was considered frivolous, unreasonable, or without foundation. I.R.C.P. 54(e)(1); *Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006). The district court here found that this matter was not frivolously pursued or defended and denied attorney fees to both parties.

Neither of these decisions were an abuse of its discretion. The trial court's conclusion that costs were awarded to the Conines was reasonable considering the Belstlers sought to prevent the Conines from using both of the disputed roads; the district court did not state that the Conines were the "prevailing party" but it is clear from its decision that it considered the Conines as ultimately prevailing. As both parties presented legal theories that were ultimately successful

---

[3] As the Belstlers did not appeal the denial of attorney fees pursuant to I.C. § 12-120 it will not be addressed.

before the district court, it was not an abuse of the court's discretion to find that the matter was not frivolously pursued or defended when it denied attorney fees. The district court did not abuse its discretion by awarding costs to the Conines and denying attorney fees to both parties.

2. Attorney fees on appeal.

Both parties argue on appeal that they should be awarded attorney fees on appeal pursuant to Idaho Code Section 12-121 if they are found to be the prevailing party.[4] This code section allows the Court the discretion to award attorney fees to the prevailing party. I.C. § 12-121. Normally, this Court will award attorney fees pursuant to I.C. § 12-121 if the appeal merely invites the Court to reweigh the evidence or second guess the lower court, or if the appeal was brought or defended frivolously, unreasonably, or without foundation. *See Crowley v. Critchfield,* 145 Idaho 509, 514, 181 P.3d 435, 440 (2007). Since this appeal was not brought frivolously, unreasonably, or without foundation, we decline to award attorney fees on appeal.

## IV. CONCLUSION

We reverse the district court's finding on reconsideration that the Easement Agreement merged with the Sanders-Henry Deed and affirm the district court's original finding of express easements. We affirm the district court's enjoinment of the relocation of the northerly easement to a location depicted on the trial court exhibit and affirm the district court's denial of attorney fees and award of costs. We decline to award attorney fees on appeal. Costs are awarded to the Conines.

Justice EISMANN, J. JONES, W. JONES AND HORTON, **CONCUR.**

---

[4] Both parties cite to Rule 54(e)(1) as part of their arguments for attorney fees on appeal, but neither argues how this rule is applicable to the Supreme Court. *See* I.R.C.P. Rule 1(a); *Bagley v. Thomason,* 149 Idaho 799, 805, 241 P.3d 972, 978 (2010).